NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SANFA SWARAY CONTEH,**

*Petitioner*

**v.**

**DEPARTMENT OF COMMERCE,**

*Respondent*

---

2022-1693

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-21-0012-I-1.

---

Decided: October 12, 2022

---

SANFA SWARAY CONTEH, Rosharon, TX, pro se.

SARAH E. KRAMER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, DEBORAH ANN BYNUM, PATRICIA M. MCCARTHY.

---

Before LOURIE, TARANTO, and STARK, *Circuit Judges*.

PER CURIAM.

Sanfa Conteh appeals from the decision of the Merit Systems Protection Board ("the Board") affirming the Department of Commerce's National Oceanic and Atmospheric Administration's ("NOAA's") action of removing Mr. Conteh from the position of Second Assistant Engineer and from the Federal Service. *We affirm.*

## BACKGROUND

On July 18, 2016, Mr. Conteh was selected for the position of Second Assistant Engineer in the Marine Operations Center (MOC), a division of the Office of Marine and Aviation Operations within the NOAA. The MOC Crew is a relief pool of Wage Marine employees who are assigned to work on vessels on an as-needed basis. As set forth by the Marine Operations Relief Pool Tours of Duty Agreement, as a relief pool employee, Mr. Conteh was required to "work a minimum of 120 days" each calendar year. S.A. 7.[1] The Relief Pool Agreement, which Mr. Conteh signed on July 19, 2018, notes that "[f]ailure to uphold the terms of the . . . Marine Operations Relief Pool Tours of Duty Agreement . . . could result in disciplinary action, up to and including removal from Federal service." *Id.* at 9.

On December 19, 2019, Mr. Conteh was notified that, having completed only 95 days of work on assignment, he failed to meet the 120-day requirement. S.A. 26. In response, he noted that 2019 was the first year since he had been working for NOAA that he did not clearly fulfill the 120-day requirement. In previous years, Mr. Conteh completed over 180 working days. *Id.* Mr. Conteh also asserted that a government shutdown, which lasted through January 25, 2019, adversely affected his work schedule. For example, due to the government shutdown, a 28-day

---

[1] "S.A." refers to the Supplemental Appendix filed with Respondent's brief.

assignment that Mr. Conteh had accepted was cancelled. *Id.* Mr. Conteh also asserted that he called his supervisor several times asking for work in the beginning of the year but was told that no work was available. *Id.* Mr. Conteh also asserted that the government shutdown subsequently required him to supplement his income and find work elsewhere in order to provide for his family. *Id.*

On January 30, 2020, Mr. Conteh received a letter from Lieutenant Commander Lecia Salerno, informing him that she was proposing to remove him from the position of Second Assistant Engineer for failure to meet the 120-day condition of employment. S.A. 27. In her letter, Lieutenant Commander Salerno noted that over the course of his three year and six-month employment, Mr. Conteh's performance had generally been satisfactory. *Id.* at 30. She also stated that she appreciated that the government shutdown may have had an effect on Mr. Conteh's income during the month of January. *Id.* at 29. But Mr. Conteh had declined three assignments offered to him later in 2019, any one of which would have been sufficient for meeting the 120-day requirement. *Id.* Lieutenant Commander Salerno also noted that, in making her decision, she considered that Mr. Conteh received a seven-day suspension in November, 2019, for negligence in the performance of his duties and failure to follow instructions. *Id.* at 30. Lieutenant Commander Salerno concluded by stating that the "seriousness of [Mr. Conteh's] misconduct outweigh[ed] the mitigating factors and justifie[d his] removal from Federal service." *Id.*

On February 2, 2020, Mr. Conteh emailed Captain Daniel Simon, raising the issue higher in the chain of command, asserting that he met the 120-day condition of employment for 2019 if the 25 days he spent on furlough during the government shutdown were counted along with his 95 days of active service. S.A. 33. For support, Mr. Conteh pointed to an agency bulletin titled Timekeeping Guidance for Excepted Employees for End of Lapse in

Appropriations, dated January 25, 2019, which notes that "any leave scheduled during the furlough period should be deleted and entered as TC code 01 (Regular Base Pay)," and that "[n]o furlough time should be recorded on your time card." A. 40.[2]

On March 5, 2020, Mr. Conteh received a letter from Captain Simon informing him that he had decided to remove Mr. Conteh from his position of Second Assistant Engineer and the Federal service effective March 11, 2020 based on the failure to meet a condition of employment. S.A. 38. While he considered Mr. Conteh's arguments about furlough "to be a mitigating factor," Captain Simon wrote that Mr. Conteh "d[id] not dispute . . . that [he] failed to work a minimum of 120 days in 2019 as required." *Id.* at 38–39. Captain Simon also wrote that the clarity with which Mr. Conteh was aware of the 120-day requirement and its importance rendered its violation grounds for removal. *Id.*

On October 7, 2020, Mr. Conteh filed an appeal to the Board challenging: (1) whether the agency proved by a preponderance of the evidence that the appellant engaged in the misconduct as charged; (2) whether the agency proved by a preponderance of the evidence that there is a nexus between the charged misconduct and the efficiency of the service; and (3) whether the agency proved that it properly considered the aggravating and mitigating circumstances relating to the penalty and, if so, whether the penalty exceeded the bounds of reasonableness. Dec., 5.[3]

---

[2]    "A." refers to the Appendix filed with Appellant's brief.

[3]    "Dec." refers to the June 2, 2021 MSPB Decision in *Conteh v. Commerce*, DC-0751-21-0012-I-1, which was made final on April 12, 2022.

On April 29, 2022, the Board's Administrative Judge issued a decision upholding Mr. Conteh's removal, finding that the "unrefuted evidence . . . proves that he worked only 95 days in 2019," that there was a nexus between Mr. Conteh's failure to meet the 120-day requirement and the efficiency of the service, and that the agency properly considered the relevant circumstances in deciding to remove Mr. Conteh from Federal service. Dec., 7–17.

Mr. Conteh appealed the Administrative Judge's decision affirming the agency's removal action, asserting that the Administrative Judge erred in weighing the evidence in sustaining the charge. On April 2, 2022, the Board found that Mr. Conteh had not established any basis for granting his petition for review under 5 C.F.R. § 1201.115. The Board thus denied the petition for review and affirmed the initial decision, making the Administrative Judge's decision the final decision of the Board.

Mr. Conteh then appealed to this court. We have jurisdiction pursuant to 5 U.S.C. § 7703(b)(1)(A) and 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We review the Board's legal determinations *de novo* and its underlying findings of fact for substantial evidence. *See, e.g.*, *Welshans v. United States Postal Serv.*, 550 F.3d 1100, 1102 (Fed. Cir. 2008). A court will not overturn an agency decision if it is not contrary to law and was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. Nat'l Lab. Rel. Bd.*, 305 U.S. 197, 229 (1938). "[T]he standard is not what the court would decide in a *de novo* appraisal, but whether the administrative determination is supported by substantial evidence on the record as a whole." *Parker v. United States Postal Serv.*, 819 F.2d 1113, 1115 (Fed. Cir. 1987).

On appeal, Mr. Conteh argues that the Board failed to consider: (1) that he was paid for 121 days of work (including the furlough); (2) that he accepted thirty days of work that the agency cancelled due to the government shutdown; and (3) that he fulfilled a separate requirement of working 90 days during the field season, which runs from May 1 to October 31. He further contends that (4) the Board misapplied the Government Employee Fair Treatment Act of 2019. We address these arguments in turn.

First, Mr. Conteh argues that the Board failed to consider that he was paid for 121 days of work, and that such payment establishes that he met the 120-day work requirement. However, the record is clear that the Board did consider this assertion. Dec., 11. The Board held that "[a]lthough the record establishes that the appellant did in fact receive back pay for the shutdown period, there is nothing in the record to support or even suggest that the appellant's receipt of back pay under the circumstances qualifies towards the requisite 120 'work' day requirement described in the Marine Operations Agreement and/or the Relief Pool Agreement." *Id.* The Board held that, "[t]o the contrary, the relevant Agreements specifically require that the employee '**work** a minimum of 120 days during the calendar year' on 'tour.'" *Id.* (emphasis original). The Board supported this interpretation by noting that Lieutenant Commander Salerno testified without contradiction that paid days on leave do not count towards the 120-workday requirement because the employee is not on assignment during those days. *Id.*

Second, Mr. Conteh asserts that the Board did not consider that he accepted thirty days of work that the agency cancelled due to the government shutdown, referencing an assignment Mr. Conteh accepted in late January 2019 to work on the NOAA ship *Nancy Foster*. On the contrary, the Board expressly addressed that "appellant appears to suggest that the agency's cancellation of one of the assignments that he accepted in early 2019 should excuse his

failure to meet his condition of employment." Dec., 12. The Board found that "although the appellant could have theoretically satisfied his 120-workday obligation if he had been able to complete the *Nancy Foster* assignment, such was not the case due to the cancellation and the appellant had a contractual obligation to remain flexible and to satisfy his 120-workday requirement." *Id.* The Board concluded that there was nothing in the record to support or suggest that the agency had any obligation to alter or reduce Mr. Conteh's workday requirements under these circumstances. *Id.*

Third, Mr. Conteh asserts that the Board failed to consider that he fulfilled a separate requirement requiring him to work 90 days during the field season, which ran from May 1 to October 31. Mr. Conteh is again mistaken. The Board noted that Relief Tour employees were required to work each calendar year, "includ[ing] 90 days availability during peak [field] season between May 1 and October 31." Dec., 3. The Board then found that "the unrefuted evidence proves that [Mr. Conteh] worked aboard the *Ferdinand Hassler* for 58 days from May 18 to July 14, 2019, and aboard the *Oregon II* for 37 days from August 11 to September 16, 2019." *Id.* at 7. There does not appear to be any dispute that these 95 days on assignment between May 18, 2019 and September 16, 2019 fulfilled the 90-day field season requirement. We note, however, that NOAA never asserted that Mr. Conteh failed to meet this requirement. Thus, the fact that Mr. Conteh worked 95 days during the field season is irrelevant to his dismissal for failure to meet the separate 120-day requirement.

Finally, Mr. Conteh asserts that the Board misapplied the Government Employee Fair Treatment Act of 2019. We begin by noting that Mr. Conteh did not raise an argument involving the Government Employee Fair Treatment Act before the Board. The argument is thus considered forfeited. *Cecil v. Dep't of Transp., F.A.A.*, 767 F.2d 892, 894 (Fed. Cir. 1985) ("[P]etitioner is precluded from raising an

issue in this court which could have been raised below but was not."); *Rockwell v. Dep't of Transp., F.A.A.*, 789 F.2d 908, 913 (Fed. Cir. 1986) ("Our precedent clearly establishes the impropriety of seeking a reversal of the board's decision on the basis of assertions never presented to the presiding official or to the board."). Still, we note that the relevant portion of the Government Employee Fair Treatment Act provides only that "[e]ach employee of the United States Government or of a District of Columbia public employer furloughed as a result of a covered lapse in appropriations shall be paid for the period of the lapse in appropriations, and each excepted employee who is required to perform work during a covered lapse in appropriations shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates." Government Employee Fair Treatment Act of 2019, Pub. L. No. 116-1, 133 Stat 3 (Jan. 16, 2019). This language does not state that days spent furloughed should count as working days for fulfillment of the MOC Crew's 120-day requirement, and thus it does not support Mr. Conteh's assertion that he met this requirement.

## CONCLUSION

We have considered Mr. Conteh's remaining arguments but find them unpersuasive. For the foregoing reasons, the decision of the Board is *affirmed.*

## AFFIRMED

### COSTS

No costs.